# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SHEYVETTE D. DINKENS,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**CREATIVE BUSINESS SOLUTIONS, LLC** )<br>**and KRISTINA DIETRICK,** )<br>)<br>Defendants. ) | **Case No. 13-2158-RDR** |

## MEMORANDUM AND ORDER

This is an action alleging retaliation in violation of 42 U.S.C. § 1981 and tortious interference with an expected business relationship in violation of state law. This case is before the court upon defendants' motion to dismiss for failure to state a claim, pursuant to FED.R.CIV.P. 12(b)(6). Plaintiff is Sheyvette Dinkens, an African-American female. Defendants are Creative Business Solutions, LLC ("CBS") and Kristina Dietrick who is alleged to be the president of defendant CBS.

Plaintiff asserts that she was offered an opportunity to work for United Way of Greater Topeka ("United Way") but that this offer was withdrawn because of defendants' actions which were motivated by a desire to retaliate against plaintiff for pursuing a race discrimination claim against a client of defendants.

I. THE COMPLAINT'S ALLEGATIONS

The complaint alleges that defendant CBS is a human resources company which has done work for a former employer of plaintiff, Florence Crittenton Services of Topeka, Inc. ("Florence Crittenton"), and United Way. Plaintiff separated from employment with Florence Crittenton in December 2010 and later filed an administrative charge of discrimination in 2011 and a lawsuit in 2012 against Florence Crittenton alleging race and disability discrimination. The lawsuit is no longer pending.

Prior to filing the lawsuit against Florence Crittenton, plaintiff applied for a position with United Way. She submitted a resume to United Way but did not list Florence Crittenton as a prior employer "due to limited space on a resume and her desire to include significant volunteer and employment positions that pertain to the position she sought with United Way." Doc. No. 1, ¶ 13.

United Way interviewed and decided to hire plaintiff. Plaintiff accepted the offer. Plaintiff was not asked during the interview if there were any employment positions she had previously held that were not listed on her resume, nor did she offer such information. Pursuant to its procedures, United Way informed CBS of its decision to hire plaintiff. According to the complaint, upon learning of this hiring decision, defendant

Dietrick "immediately contacted Miriam Krehbiel, president of United Way and said she was familiar with plaintiff." Doc. No. 1, ¶ 16. The complaint continues to allege that:

> Dietrick asked Krehbiel to send her plaintiff's application for employment, explaining that there were "red flags" concerning plaintiff and that she would not be a "good fit" with United Way. Krehbiel stated there was no application, only a resume, which she then forwarded to Dietrick.
>
> Dietrick later contacted Krehbiel and told her that plaintiff had not listed on her resume Florence Crittenton as an employer.
>
> In consultation with Dietrick, Krehbiel decided to call Florence Crittenton. After contacting Florence Crittenton, and again in consultation with Dietrick, Krehbiel decided to withdraw the offer of employment to plaintiff.

Doc. No. 1, ¶¶ 16-18.

Plaintiff further alleges that defendants were aware of plaintiff's discrimination claims against Florence Crittenton because they assisted Florence Crittenton in defending plaintiff's administrative charge. Plaintiff asserts that "defendants retaliated against plaintiff by falsely stating to Krehbiel that there were 'red flags' concerning plaintiff, and that she would not be a 'good fit' with United Way." Doc. No. 1, ¶ 21. Plaintiff asserts that in reliance upon these alleged false statements, United Way withdrew the offer of employment to plaintiff, causing plaintiff financial and emotional injury. Plaintiff further asserts that defendants' conduct constituted

3

intentional and wrongful interference with an expected employment relationship.

II. MOTION TO DISMISS STANDARDS

FED.R.CIV.P. 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has stated that a complaint must provide a defendant with "fair notice" of the claims against it and the grounds for relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Pursuant to FED.R.CIV.P. 12(b)(6), a court may dismiss a complaint when it does not contain enough facts to state a claim to relief that is plausible on its face. Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal citations and parentheticals omitted). This means that the factual allegations should "raise a reasonable expectation that discovery will reveal evidence" in support of plaintiff's claims. Id. at 556. In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) cert. denied, 548 U.S. 1148 (2010).

III. SECTION 1981 RETALIATION CLAIM

Under 42 U.S.C. § 1981(a): "All persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ." These rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law." § 1981(c). The statute has been interpreted as prohibiting retaliation against persons because of efforts to vindicate rights protected under § 1981. Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 997-98 (10th Cir. 2011).

It is agreed that to bring a § 1981 retaliation claim against defendants plaintiff must allege a plausible causal connection between plaintiff's loss of the job offer and

5

plaintiff's protected activity, and plaintiff must allege a plausible causal connection between plaintiff's loss of the job offer and defendants' actions. See O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1252 (10th Cir. 2001)(prima facie case of retaliation requires proof that plaintiff engaged in protected opposition to discrimination, plaintiff was subjected to an adverse employment action, and there was a causal connection between the protected activity and the adverse action); Roberts v. Roadway Exp., Inc., 149 F.3d 1098, 1103 (10th Cir. 1998)(same). Defendants contend that plaintiff has failed to allege a plausible causal connection between the withdrawal of the job offer and plaintiff's protected activity, and that plaintiff has failed to allege a plausible causal connection between the withdrawal of the job offer and defendants' conduct.

Plaintiff has alleged that the job offer was withdrawn soon after defendants (who were aware of plaintiff's protected activity and helped defend the administrative charge against Florence Crittenton) learned from United Way that the offer had been extended. Plaintiff has also alleged that defendants consulted with United Way and warned United Way against hiring plaintiff, before asking United Way for plaintiff's resume and thereafter informing United Way that plaintiff had not mentioned her prior employment with Florence Crittenton on the resume. Defendants assert that "[i]t defies common sense that the

6

[d]efendants, who were not the target of the initial charge of discrimination and experienced absolutely no adverse effects from the filing of the charge, would seek to cause the withdrawal of an employment offer to the [p]laintiff." Defendants, however, do not offer any other obvious reasons for defendants to warn United Way against hiring plaintiff before defendants looked at the resume. While the court does not pretend to decide the ultimate question, plaintiff's allegations of retaliatory animus do not seem to be absurd. Instead, they seem more than a mere possibility in the context described in the complaint. The court believes the complaint's allegations suffice to support a reasonable expectation that discovery will reveal that defendants were motivated to warn United Way by plaintiff's protected activity.

Defendants also suggest that dismissal is warranted because the withdrawal of the job offer stemmed from Ms. Krehbiel's action, not defendants' conduct. The court finds that the allegations in the complaint provide a plausible basis from which to find a causal connection between plaintiff's injury and defendants' conduct, notwithstanding the role played by Ms. Krehbiel.

As the Supreme Court has held there can be more than one proximate cause for an injury, even in the context of an employment decision:

7

> Proximate cause requires only "some direct relation between the injury asserted and the injurious conduct alleged," and excludes only those "link[s] that are too remote, purely contingent, or indirect." Hemi Group, LLC v. City of New York, 559 U.S. 1, ___, 130 S.Ct. 983, 989, 175 L.Ed.2d 943 (2010). We do not think that the ultimate decisionmaker's exercise of judgment automatically renders the link to the supervisor's bias "remote" or "purely contingent." The decisionmaker's exercise of judgment is also a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes. See Sosa v. Alvarez-Machain, 542 U.S. 692, 704, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). Nor can the ultimate decisionmaker's judgment be deemed a superseding cause of the harm. A cause can be thought "superseding" only if it is a "cause of independent origin that was not foreseeable." Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 837, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996).

Staub v. Proctor Hospital, 131 S.Ct. 1186, 1192 (2011).

In Staub, the Court sustained a jury verdict against an employer under a law protecting military members from employment discrimination, when evidence showed that a supervisor's anti-military animus caused an Army Reserve member's discharge from civilian employment, even though the decisionmaker who ordered the discharge did not have an anti-military bias. The Court maintained this result notwithstanding that the decisionmaker conducted an independent investigation. The Court stated:

> [The defendant] suggests that even if the decisionmaker's mere exercise of independent judgment does not suffice to negate the effect of the prior discrimination, at least the decisionmaker's independent investigation (and rejection) of the employee's allegations of discriminatory animus ought to do so. We decline to adopt such a hard-and-fast rule. As we have already acknowledged, the

> requirement that the biased supervisor's action be a causal factor of the ultimate employment action incorporates the traditional tort-law concept of proximate cause. . . . Thus, if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action (by the terms of [the statute] it is the employer's burden to establish that), then the employer will not be liable. But the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation entirely justified. We are aware of no principle in tort or agency law under which an employer's mere conduct of an independent investigation has a claim-preclusive effect. Nor do we think the independent investigation somehow relieves the employer of "fault." The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause and did in fact cause, an adverse employment action.

Id. at 1193. (interior citation omitted).

At this early stage in the proceedings, the court cannot state automatically that Ms. Krehbiel's decision was so independent that it severed any causal connection between defendants' conduct and plaintiff's alleged injury even though Ms. Krehbiel is alleged by plaintiff to have contacted Florence Crittenton and (by defendants) to have conducted an independent investigation before deciding to withdraw the offer of employment.

For the above-stated reasons, the court finds that plaintiff has stated a claim for relief under § 1981.

IV. TORTIOUS INTERFERENCE

Defendants' argument against plaintiff's claim for tortious interference with an expected business relationship is basically the same as the argument against plaintiff's § 1981 claim. Defendants contend that plaintiff's allegations do not establish a plausible claim that defendants' conduct was the direct and proximate cause of plaintiff's injury. The Supreme Court in Staub drew upon principles of general tort law when it made its decision. Id. at 1191-93. These principles should apply to plaintiff's tortious interference claim. As the court believes plaintiff's factual allegations support a plausible claim of proximate cause for a § 1981 retaliation claim, the court also believes the allegations are sufficient to support a plausible claim of proximate cause for plaintiff's common law tortious interference claim.

V. CONCLUSION

For the above-stated reasons, the court shall deny defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated this 4th day of September, 2013, at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge