**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| SHEYVETTE D. DINKENS<br><br>Plaintiff,<br><br>v.<br><br>NEW DAWN ENTEPRISES, L.L.C.,<br>d/b/a CREATIVE BUSINESS SOLUTIONS<br>and KRISTINA DIETRICK<br><br>Defendants. | ) | Case No. 13-2158-RDR |

**MEMORANDUM AND ORDER**

This case contains a claim of retaliation under 42 U.S.C. § 1981 and a state-law claim for tortious interference with an expected business relationship. Plaintiff claims that defendants retaliated against plaintiff for filing an administrative complaint alleging discrimination by warning a prospective employer not to hire plaintiff. Plaintiff further claims that this caused the prospective employer to withdraw a job offer that plaintiff had accepted. This case is now before the court upon the motion for summary judgment of defendants New Dawn Enterprises, L.L.C. d/b/a Creative Business Solutions and Kristina Dietrick. Doc. No. 41.

I. SUMMARY JUDGMENT STANDARDS

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a). The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007).

"Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.... These facts may be shown by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves." Southway v. Central Bank of Nigeria, 149 F.Supp.2d 1268, 1273 (D.Colo.2001), aff'd, 328 F.3d 1267 (10th Cir.2003).

"Summary judgment is . . . appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F.Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.... Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient ... as are conclusory assertions that factual disputes exist." Id. (interior citations and

quotations omitted). The evidence presented must be based on more than mere speculation, conjecture, or surmise to defeat a motion for summary judgment. Rice v. United States, 166 F.3d 1088, 1092 (10th Cir. 1999).

II. UNCONTROVERTED FACTS

For the purposes of the summary judgment motion, the following facts shall be considered uncontroverted. In April 2012, plaintiff, who is African-American, applied by email for a job with the United Way of Greater Topeka. She submitted a resume that did not include her previous employment with Florence Crittenton Services of Topeka, Inc. or her current employment with St. Francis Hospital. Plaintiff had a job with Florence Crittenton until December 2010. She filed a charge of discrimination with the Kansas Human Rights Commission against Florence Crittenton on or about June 11, 2011.

Plaintiff was interviewed for a position with United Way by Miriam Krehbiel, the President and CEO, and Tom Stratton, the Vice President of Community Impact. During the interview, plaintiff did not mention her previous full-time employment with Florence Crittenton, although she did mention her position at that time with St. Francis Hospital. Both were entry-level positions, not related to plaintiff’s professional development. Plaintiff was not asked during the interview whether there were any other employers not listed on her resume, nor was she asked

at any time during the interview to relate her complete work history.

On May 1, 2012, Stratton extended an offer of employment at United Way to plaintiff. She accepted. A copy of the job offer was transmitted to Alisa Mezger-Crawford, an employee of defendant Creative Business Systems ("CBS"). CBS is a human resources consulting company which provided services to Florence Crittenton and United Way. Defendant Kristina Dietrick is the owner and President of CBS.

Back when plaintiff worked for Florence Crittenton, Dietrick participated in a meeting on December 4, 2010 with plaintiff and JoLana Pinon, the CEO of Florence Crittenton. The meeting concerned whether plaintiff would accept a schedule change. Plaintiff felt that she was being forced to change her schedule, which had been approved to accommodate her disability, while a white employee was allowed to retain a certain schedule. Plaintiff left the organization. Dietrick wrote after the meeting that plaintiff's resignation was being accepted by Florence Crittenton and that plaintiff was leaving in good standing. As mentioned previously, plaintiff filed a discrimination complaint with the Kansas Human Rights Commission against Florence Crittenton in June 2011. Dietrick was involved in responding to plaintiff's charge of discrimination and attending meetings with Pinon and Florence Crittenton's attorney

regarding the charge.  Dietrick received a copy of the right-to-sue letter which was sent from the EEOC to Florence Crittenton in February 2012.  The letter initiated a 90-day period in which plaintiff could file suit against Florence Crittenton. Defendant Dietrick was concerned about this.

Tom Stratton notified Mezger-Crawford of United Way's employment offer to plaintiff because CBS provided new employee orientation and human resources training for United Way.  At the same time, Stratton emailed plaintiff to ask when she could start and to inform plaintiff that she would meet with Mezger-Crawford or someone else to work out the details, such as filling out paperwork.  United Way did not ask Mezger-Crawford or CBS to do a background check on plaintiff, although CBS did perform such work for United Way upon request.

On May 3, 2012, Mezger-Crawford forwarded Stratton's email regarding plaintiff's hiring to Dietrick commenting, "I just saw this . . . I had no idea this was someone they were contemplating hiring."  About two hours later, Dietrick emailed Krehbiel, stating:  "Please contact me as soon as possible." Krehbiel, who was out of town, asked if they could speak by phone.  Dietrick responded that Krehbiel could call around the lunch hour and that Dietrick would step out of her lunch meeting to talk.

Krehbiel, Stratton and Dietrick spoke over the phone around noon on May 3, 2012. Dietrick stated that she was familiar with plaintiff, that there were "red flags" concerning plaintiff and that Dietrick was concerned that plaintiff wouldn't be a good fit for United Way. Krehbiel stated that they had checked with plaintiff's past employers. Dietrick asked that plaintiff's application be forwarded and was told that plaintiff was not required to complete an application, only submit a resume. So, Dietrick asked that plaintiff's resume be forwarded. Krehbiel forwarded plaintiff's resume to Dietrick during the late evening of May 3, 2012 and said that she wanted "to clear this up tomorrow if possible." Dietrick emailed back that: "We will clean this up pronto!" During the morning on May 4, 2012, Dietrick emailed Krehbiel with plaintiff's dates of employment at Florence Crittenton and her application for employment at Florence Crittenton.

Dietrick did not tell Krehbiel that plaintiff had filed a discrimination charge against Florence Crittenton. But, by this time, Krehbiel was aware that plaintiff had worked at Florence Crittenton and had not listed that employer on her resume or mentioned that employer during her interview for the position with United Way.

On May 4, 2012, Mezger-Crawford emailed Dietrick with the suggestion that they could request that plaintiff fill out an

application, which asks for an applicant's last four employers. She stated, "[a]lthough this is an 'after the fact' request, it would be interesting to see what [plaintiff] puts on the application and see if it is different than what was listed on her resume." Mezger-Crawford also suggested that another idea would be to have Stratton contact plaintiff "and explain that the job offer he made is actually a 'conditional' job offer pending a satisfactory background check." Stratton did tell plaintiff that her potential hiring was on hold as additional information needed to be checked.

Krehbiel decided to call Florence Crittenton CEO JoLana Pinon "for a reference" regarding plaintiff. Dietrick, who was aware of this planned call, contacted Pinon on May 5 or May 6 to give her a heads up that Krehbiel may be calling her, but did not give Pinon the reasons Krehbiel might call. Dietrick did not advise Krehbiel not to contact Pinon without authorization from plaintiff. Sometimes Dietrick gives such advice to her clients.

Krehbiel did call Pinon at which time Pinon told Krehbiel that plaintiff was not eligible for rehire at Florence Crittenton and that Florence Crittenton's relationship with plaintiff was difficult at best. Pinon also suggested that Krehbiel should visit with Dietrick. Pinon did not inform

Krehbiel that plaintiff had filed a charge of discrimination against Florence Crittenton.

Dietrick did not tell Krehbiel that plaintiff was not eligible for rehire at Florence Crittenton or discuss the issues which developed with regard to plaintiff at Florence Crittenton.

On May 8, 2012, Krehbiel sent an email to plaintiff rescinding the offer of employment with United Way. She said in the email that the job offer was withdrawn because plaintiff had not disclosed her employment at Florence Crittenton and because Pinon stated that plaintiff was not eligible for rehire. On May 9, 2012, Mezger-Crawford forwarded by email to Dietrick the email Dietrick had written concerning the December 6, 2010 meeting between Pinon, Dietrick and plaintiff. Mezger-Crawford wrote: "FYI – this is the email I mentioned about [plaintiff] leaving in good standing which I took to mean she would be eligible for rehire. However, if JoLana [Pinon] says differently that is her call [smiley face]."

Pinon has stated in an affidavit that nothing said or done by defendants influenced in any way the statement Pinon made to Krehbiel regarding plaintiff. Krehbiel has stated in a deposition that she decided to withdraw the offer of employment to plaintiff for reasons unrelated to anything said or done by Dietrick or any employee of CBS.

## III. THERE ARE MATERIAL ISSUES OF FACT AS TO WHETHER DEFENDANTS' ACTIONS CAUSED THE WITHDRAWAL OF PLAINTIFF'S JOB OFFER.

Defendants raise one argument to support their summary judgment motion against plaintiff's § 1981 claim and make a similar argument against plaintiff's state-law tortious interference claim. Defendants contend that there is no evidence to support plaintiff's claim of a causal relationship between plaintiff's protected activity (the filing of the administrative complaint) and the withdrawal of the employment offer by United Way. Defendants argue as well, as to plaintiff's tortious interference claim, that plaintiff cannot prove that defendants' actions were the proximate cause of plaintiff's alleged injury because the employment offer was withdrawn due to Krehbiel's independent decision and plaintiff's failure to disclose her previous employment with Florence Crittenton. Because defendants are making what appears to be the same argument as to both of plaintiff's claims and because the proximate cause standards for both claims are drawn from the same common law source, the court shall address defendant's arguments as to both claims together.

The court's analysis here is somewhat complicated by the fact that, unlike most cases, the defendants here are not and never were plaintiff's employer or supervisor.[1] In most

[1] Privity of contract, as between an employee and an employer, is not necessary for a violation of § 1981. See Flores v. City and County of

employment discrimination or retaliation cases, the alleged adverse action is taken against a plaintiff-employee by a defendant-employer or supervisor. Also, in most cases, the alleged adverse action (e.g., job termination) coincides with the alleged injury. Thus, in most cases the main issue of causation is whether the adverse action/injury was substantially motivated by or would not have happened without an illegal motivation. On summary judgment motions, courts often examine this issue by looking at whether there is direct evidence of retaliation or whether retaliation may be proven indirectly (the McDonnell Douglas approach). See, e.g., Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 998 (10th Cir. 2011).

Here, there is a separation between the adverse action by defendants (i.e., the alleged warning to United Way against hiring plaintiff) and the alleged injury - - the withdrawal of plaintiff's job offer by United Way. There is also a separation between the defendants who committed the alleged adverse action and the United Way officials who withdrew plaintiff's job offer. Defendants did not act as United Way's employees, although they did have a business relationship with United Way. So, the question here is not the normal issue of whether an adverse

---

Denver, 30 Fed.Appx. 816, 819 (10th Cir. 2002); Al-Khazaji v. Saint Francis College, 784 F.2d 505 (3rd Cir. 1986); Faraca v. Clements, 506 F.2d 956, 959 (5th Cir.) cert. denied, 422 U.S. 1006 (1975); see also, Foley v. University of Houston System, 355 F.3d 333, 338 n.7 (5th Cir. 2003)(listing cases from five circuits suggesting § 1981 liability against individual defendants).

action/injury was motivated by retaliation. Instead, the issue is whether plaintiff can prove that defendants' adverse action caused United Way's withdrawal of plaintiff's job offer in spite of the absence of an employment relationship between defendants and United Way.

In this court's order denying defendants' motion to dismiss, we cited Staub v. Proctor Hospital, 131 S.Ct. 1186, 1192 (2011) mainly for the proposition that there can be more than one proximate cause for an injury, even in the context of an employment decision. Staub is a so-called "cat's paw" case where an employer is alleged to be liable "for the animus of a supervisor who was not charged with making the ultimate employment decision" but allegedly influenced the decision by virtue of the supervisor's reports or evaluations.[2] Id. at 1190. This case is not a cat's paw case because defendants are not employees of United Way. Also, unlike Staub, where the adverse action (a job termination) is the alleged injury to the plaintiff, here the adverse action by defendants is not the alleged injury. Nevertheless, Staub is comparable to the facts of this case because both cases examine whether an actor's allegedly biased conduct can be said to have caused an injury inflicted by a different decisionmaker.

[2] The derivation of the term "cat's paw" is explained at 131 S.Ct. at 1990 n.1. The term originates from a story in which a cat is persuaded by a monkey to extract chestnuts from a fire. The monkey winds up with the chestnuts while the cat is left only with burned paws.

In examining this issue, the Court did not focus upon whether there was direct evidence of retaliation or engage in McDonnell Douglas analysis. Instead, the Court referred to traditional tort-law concepts of proximate cause and observed that "[w]e are aware of no principle in tort or agency law under which an employer's mere conduct of an independent investigation has a claim-preclusive effect." More recently, in University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2524-25 (2013), the Court again emphasized the role of standard tort causation principles in employment discrimination cases, when it stated: "Causation in fact - - i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury - - is a standard requirement of any tort claim. . . . This includes federal statutory claims of workplace discrimination."

Here, in spite of defendants' arguments, we believe there is a material issue of fact as to whether defendants' actions directly caused United Way to withdraw plaintiff's job offer. Defendants compare this case to Frederick v. Metropolitan State University, 535 Fed.Appx. 713 (10th Cir. 10/3/13) which is a cat's paw case. In Frederick, the plaintiff was a female associate professor who applied for promotion at a university. The plaintiff prepared a dossier in support of her request for promotion and the dossier moved through seven levels of review. The ultimate decisionmaker was the president of the university.

The plaintiff had applied for promotion in 2006 and was not recommended for promotion at five of the seven levels of review. The plaintiff applied again in 2007. This time, she was not recommended for promotion at six of the seven levels of review and her request for promotion was ultimately denied, at the seventh level, by the president. The plaintiff argued that the decision to deny her promotion in 2007 was influenced by the opposition of the interim dean of the business school (at the fourth level of review) who, the plaintiff alleged, did not like outspoken women and disliked plaintiff's advocacy for minorities and women at the university.

Summary judgment was granted against the plaintiff's claims in Frederick because there was no evidence of a causal relationship between the dean's recommendation against promotion and the president's decision to deny promotion. The Tenth Circuit affirmed this decision because of the absence of evidence in the plaintiff's favor. The court commented that there was no evidence that the dean communicated with the faculty senate committee (a level of review above the dean) and that there was no evidence rebutting the affidavit of the president that he did not rely exclusively on the dean's comments or anyone else's, and that he independently reviewed the plaintiff's dossier and made his own assessment regarding her request for promotion. The Tenth Circuit also noted that at

the level of review below the president, it was remarked that the plaintiff did not come close to meeting the standard for promotion.

Defendants contend that, as in Frederick, the ultimate decisionmaker in this case (Miriam Krehbiel) has stated that her withdrawal of plaintiff's employment offer was not the result of anything said or done by defendants CBS or Dietrick. Rather, according to defendants, it was the result of Krehbiel's conversations with Pinon and plaintiff's failure to disclose her previous employment with Florence Crittenton. Defendants emphasize that it was Pinon, not defendants, who told Krehbiel that plaintiff was not eligible for rehire at Florence Crittenton and that the organization had a difficult relationship with plaintiff.

In response, plaintiff contends that there is ample evidence that defendant Dietrick (unlike the dean in Frederick) exercised influence over the ultimate decisionmaker in this case. According to plaintiff, Dietrick urgently requested to talk to Krehbiel and told Krehbiel that there were "red flags" regarding plaintiff and that plaintiff would not be a good fit at United Way. Plaintiff alleges that Krehbiel sent Dietrick plaintiff's resume and asked that the situation be cleared up within a day and that Dietrick responded: "We will clean this up pronto." Defendants relayed information regarding

plaintiff’s employment at Florence Crittenton to Krehbiel and Krehbiel made the decision to tell plaintiff that the hiring decision was on hold. This was before any “independent investigation” or conversation with Pinon was conducted by Krehbiel.

“Proximate cause is causation substantial enough and close enough to the harm to be recognized by law, but a given proximate cause need not be, and frequently is not, the exclusive proximate cause of harm.” Sosa v. Alvarez-Machain, 542 U.S. 692, 704 (2004). The Tenth Circuit has held that “if ‘competent evidence [is] introduced, even though conflicting, the question[] of . . . proximate cause must be left to the jury.’” Sheets v. Salt Lake County, 45 F.3d 1383, 1389 (10th Cir. 1995)(quoting Key v. Liquid Energy Corp., 906 F.2d 500, 505 (10th Cir. 1990)). “A defendant is the proximate cause of a plaintiff’s injury if the injury [is] a natural consequence of defendant’s actions.” Id.

The court finds that there is a material issue of fact as to whether defendants’ actions were a proximate cause of the withdrawal of plaintiff’s offer of employment from the United Way. Unlike the Frederick case, the final decisionmaker in this matter, Miriam Krehbiel, had decided to offer and did offer plaintiff a job, but changed her mind after she was contacted by defendant Dietrick. Although Krehbiel has stated that she

reached her decision to withdraw the offer of employment independent of Dietrick's input, there is evidence in the record from which a jury could reasonably conclude that the withdrawal of the job offer was the natural consequence of defendants' actions. Krehbiel allegedly asked Dietrick to take care of the situation before Krehbiel spoke with anyone else about it and shortly thereafter Krehbiel put the job offer on hold. This is not the scenario in Frederick where the decision to promote the plaintiff had not been made, and five out of six levels of review had recommended against promoting the plaintiff. The process of reconsidering the employment offer was initiated by defendants who appear to have recommended withdrawing the job offer before Krehbiel spoke to anyone else, and Krehbiel effectively did that by putting the offer on hold. A reasonable jury could conclude that the withdrawal of the employment offer was a natural and foreseeable consequence of defendants' actions.

Defendants also support their argument with citation to George v. Breising, 477 P.2d 983 (Kan. 1970). In George, the defendant was an automobile repair business which left an automobile outside on its premises with the keys in the ignition. The automobile was stolen, driven and parked somewhere in Wichita. The following day, an acquaintance of the thieves, who had driven the car the previous day, returned to

the car and, while driving it again, struck a pedestrian. The pedestrian sued the repair business. The Kansas Supreme Court affirmed judgment for the defendant on the grounds that the defendant did not owe a duty of care to the pedestrian and because the harm to the pedestrian was not a foreseeable result of any alleged negligence in leaving the keys in the ignition. The court held that the negligent and criminal actions of the driver were an independent intervening act constituting the sole and proximate cause of the pedestrian's injuries.

We find George to be distinguishable from the facts of this case for the following reasons. First, there is no criminal conduct alleged in this matter. Criminal conduct is often considered a superseding cause of harm. See Restatement (Second) of Torts § 448. Second, in George, even if it was arguable that the car theft was a foreseeable result of the defendant's alleged negligence, the additional negligent driving by a third person led to the pedestrian's injuries. The operation of the third person's actions is another factor which suggests a superseding cause, particularly when those actions are wrongful. Restatement (Second) of Torts § 442(d)&(e).

Defendants contend that Pinon's negative reference was a superseding cause by a third party. But, it may be argued that Pinon's comments were a foreseeable consequence of events placed in operation by defendants. Moreover, it is not alleged that

Pinon’s comments were wrongful. These are factors which incline against finding a superseding cause. Restatement (Second) of Torts § 442(b),(e)&(f). Furthermore, plaintiff’s job offer was placed on hold before Krehbiel spoke to Pinon. There is no indication that the offer would have been reactivated if, for instance, Pinon had refused to talk to Krehbiel. In other words, it is arguable that the job offer was withdrawn on the basis of defendants’ alleged warning to United Way and that the input contributed by Pinon merely buttressed what had already been done.

Finally, the significance of plaintiff’s failure to mention her employment at Florence Crittenton on her resume and in her interview is a matter of reasonable dispute. Plaintiff was not asked to list her former employers for United Way. So, one might infer that the issue was not of genuine significance to United Way. Plaintiff left her job at Florence Crittenton fourteen months before her interview with United Way. The lapse in time may have attenuated the job’s importance to a future employer. Plaintiff has suggested that she considered her job with Florence Crittenton immaterial to her professional development and, therefore, excluded it from her resume. This might be considered a reasonable view. Also, the decision to put plaintiff’s job offer on hold when it was learned that plaintiff had worked at Florence Crittenton was made in the wake

of defendants’ “red flags” warning. Given all of these factors, it is impossible on summary judgment to rule that knowledge of plaintiff’s failure to disclose Florence Crittenton as a previous employer was a superseding cause for the withdrawal of the job offer and to separate that knowledge from defendants’ “red flags” warning to United Way.

In conclusion, the summary judgment record in this case presents a material issue of fact as to whether the withdrawal of plaintiff’s job offer was an ordinary and foreseeable result of a sequence of events initiated by defendants’ alleged retaliatory action. Viewing the record in a light most favorable to plaintiff, a reasonable person could decide that defendants warned United Way against hiring plaintiff and that this warning was of such importance to United Way that the withdrawal of plaintiff’s job offer was a natural and foreseeable consequence, given that the job offer was almost immediately placed on hold and not long after completely withdrawn.

IV. CONCLUSION

For the above-stated reasons, defendants’ motion for summary judgment (Doc. No. 41) shall be denied.

**IT IS SO ORDERED.**

Dated this 26th Day of March, 2014, at Topeka, Kansas

Richard D. Rogers
United States District Judge